The next case today is Lorna Shields v. United of Omaha Life Insurance Company, appeal number 21-1290. Attorney Savage, please introduce yourself for the record and proceed with your argument. Thank you. May it please the court, Trevor Savage for the appellant, Lorna Shields. May I please reserve two minutes for rebuttal? You may. The duties owed by a known to the law. Despite that, the appellee in this case, United of Omaha, as a fiduciary with sole discretionary authority to determine whether its insureds are eligible for the insurance for which they sign up, accepted life insurance premiums from Ms. Shields' husband, Myron, for a decade, and then informed Ms. Shields that it had not deemed him eligible for that insurance to begin with, only once Myron had died and she had submitted her claim. In granting United of Omaha's motion for summary judgment below, the district court erred in three ways. First, it misrepresented United's fiduciary duty, holding that United's duties did not extend to checking the work of Myron's employer, Duramax, to ensure that Duramax told Myron that United required evidence of good health before coverage would commence. The district court, second, the district court committed manifest injustice by denying the plaintiff the ability to engage in meaningful discovery in this case, to determine whether United had deemed Myron qualified for the coverage he had had not submitted documentary evidence of good health. And finally, the record establishes that United unreasonably denied Ms. Shields' claim on the grounds it didn't receive documentary evidence of good health, as it relied on the wrong plan language in adjudicating her claim, and therefore applied the wrong standard in denying her benefits. Counsel, you phrased your first issue in terms of the insurer unreasonably failing to check the employer's determination, or I forget what noun you used for the employer's action. Do you really mean that? Do you look at the fiduciary duty as a failure to check? No, your honor. In fact, it's the opposite. That was how the district court had framed the duty. I was referring to your statements of error that you just made. That's what puzzled me. Yes, your honor. And my statement was the district court mischaracterized that fiduciary duty. That's not what you said. That may be your argument, but good. I'm glad we clarified that. I apologize. The argument is, your honor, that it mischaracterized United's fiduciary duty by holding that United's duties did not extend to checking the work of Myron's employer. That wasn't the argument that we raised. That's not the argument that we raised now. That is solely the argument of United in this case, your honor. The plan here was restated in 2017. Does it make any difference whether we view the earlier version of the plan or the 2017 version as controlling, or is it all pretty much the same thing? No, the plans differ in several significant respects. As far as this case is concerned, you think it makes a difference which plan is controlling? Yes, your honor. My next question is, which plan do you think is controlling, the 2017 or the earlier version? I think the 2007 plan applies with respect to the conditions required for United to approve the coverage. Myron began in 2008. It was the 2007 plan that was cited in the record. There's a 2017 policy that we would submit applies to the standard that United must follow in determining whether Myron's actions or whether its review of his claim was reasonable. So here, with respect to the breach of fiduciary duty claim, the plain text of ERISA provides that a person is a fiduciary with respect to a plan if he exercises any discretionary authority or discretionary responsibility in the administration of a plan or its assets. Here, the plan explicitly provided in 2007 that coverage in excess of $100,000 began when United approved a statement of physical condition or other evidence of good health and required that that evidence be, quote, acceptable to us. It afforded United ultimate discretion to determine issues of eligibility. And under ERISA, United was required to exercise that discretionary duty prudently and loyally. Now, both the Fourth Circuit and the Eighth Circuit have held... Are you suggesting that there's any language in the 2017 plan that's different on that score that might matter? On that score, no, Your Honor. On that score, the language is consistent across both. The only distinction between the plans really comes into effect as far as the waiver argument, given that... And then just to that point, when you identified the three ways in which the district court erred in your view. The first one erred because, as you described, it mischaracterized the nature of the fiduciary duty that you claimed the defendant had and that it breached. As to the second two contentions that you made, it's not entirely evident that either of those kinds of errors go to the fiduciary duty claim as opposed to the recovery of benefits claim. Am I missing something? The second error that we assigned to the court is specifically with regard to the waiver issue, the recovery of planned benefits claim. But the third... Sorry, let me rephrase that. The discovery issue, the second issue that we articulated, applies equally with equal force to the fiduciary duty. Is it actually necessary to your fiduciary duty claim to address the discovery issue? In the sense that I thought your argument was that since you don't need... The actual knowledge isn't a relevant consideration for purposes of the fiduciary duty. It's the failure to have a system in place where they would have known that you don't really need that discovery in order for the fiduciary breach argument, whereas you would have a stronger argument for needing the discovery with respect to the waiver and therefore the recovery of benefits argument. Am I missing something? No, Your Honor. So our central argument is that... No, I'm not missing something or no, I am missing something. No, you're not missing something, Your Honor. But I'll slightly rephrase, which I think will help clarify. Our central argument is that United breached its fiduciary duty by not having that system in place to ensure that it was accepting premiums for... And your view is even the record without the discovery is sufficient to show that, at least in terms of... That's correct. That's correct. And the alternative, though, to the extent the court doesn't want to embrace that or endorse that legal principle as a whole, additional discovery could certainly have benefited the breach of fiduciary duty. How? What would it show? Well, so if a fiduciary has a duty of loyalty and prudence, the discovery that was permitted to be conducted did not bear on what United knew and when it knew it. So, for example, the interrogatory that we propounded was whether anyone at United made an effort to confirm that participants paying for heightened level of life insurance were qualified for it, and if not, why not? The answer that we received was no one at United would verify that employees were properly enrolled at their desired level of insurance because, according to policy terms, the policy holder is responsible for enrolling eligible persons. That's what I'm saying, but that answer alone right there, that is your fiduciary duty claim. Is there some other version of it which the discovery would help? Well, we would certainly invite the court to hold that right there. I understand that's not what I'm asking. Is there some other version of the fiduciary claim that was presented below to which discovery would help, given that the record shows just what you said? What is the nature of the fiduciary duty that you argued below in the complaint to the district court that could turn on the degree of knowledge that United has once it's already that they were receiving the premiums without themselves knowing more than that the employer was doing something? Well, so the answer was that United would not verify that employees were properly enrolled. We did not learn whether United had learned that Myron hadn't submitted evidence of good health or that there was a process by which… Is there a version of the that type of knowledge would be necessary to the fiduciary duty claim and was such a claim made to the district court? Yes, on both counts, Your Honor. So, there is certainly in our position a duty of prudence and loyalty in determining. Let's say, for example, discovery had demonstrated that United was aware, was in fact aware that Myron had not submitted the form that they contended was required. That would be an additional and alternative basis for breach of fiduciary duty. Okay, and then one last thing. Are you running, do we need to decide in this appeal both the recovery of benefits claims and the breach of fiduciary duty claim? You patched up for a second, Your Honor. Could you repeat that? I'm sorry. Yeah. Do we need to decide in this appeal both whether the recovery of benefits claim, and I take it there's two variants of that. There's the arbitrary and capricious version of it. There's the waiver version of it. Do we need to decide both those plus the fiduciary duty claim that you're raising in this appeal? No, Your Honor. This court could decide either in the alternative. Why is that? Since you brought both claims, you could recover under each, I presumably, is your theory, or is the thought you could not recover under each simultaneously? It was put in the alternative, Your Honor. Again, at that time, the extent and nature of the discovery that would be permitted was unknown, and so this court could certainly hold that there was a breach of fiduciary duty here without finding, for example, that Duramax was the agent of United States. I understand that we could do, but I'm asking maybe to put it this way. Have you brought two independent claims, each of which provide a basis for recovery, such that you could recover on both, or are you claiming instead that you have one claim that comes in two possible varieties and all we have to decide is that one of them works and then the other you concede falls away? The latter, Your Honor. It's our position that this court need If there are no further questions, Your Honor, we rest on our briefs and await rebuttal. Thank you, Attorney Savage. Please mute your audio and video at this time. Attorney Hahn, you have a four-minute argument. Please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court. My name is Christine Hahn, representing the Secretary of Labor, appearing as amicus curiae. I'll be presenting on the issue of fiduciary breach to argue two points. First, United was a fiduciary based on its authority to determine eligibility for supplemental coverage. Two, United breached this duty by accepting premium payments for Mr. Shields for 10 years without first ensuring that he was eligible for coverage at the time of enrollment. Now, you just said, Ms. Hahn, that its duty was to ensure that he was eligible for coverage at the time of enrollment. In your brief, you say its duty was that it was to determine that he was eligible for coverage at or near the time of enrollment, which is the government's, the Secretary's, position. Yes, Your Honor, it's at or near the time of enrollment. What does near mean, and how do we determine it? We understand that every plan is administered differently. For example, there might be a lag in accepting forms from the employer in submission to the insurer, and the minute that a person fills out an enrollment form is not when the insurer accepts this form. But before receiving premium payments, we would consider this the period when a person is enrolling for coverage, and this is the period when there are facts regarding evidence of good health that the insurer should have considered. How do we determine what near is? At or near may mean 30 days, it may mean 60 days, it may mean 24 hours. Yes, Your Honor, the material fact is when the insurer starts receiving payments because they are considering the insurer to be covered. Enrollment may be different by the circumstances between the employer submitting these documents to the insurer, but when an insurer starts receiving premium payments, they should have ensured that the person was eligible when they were enrolling for coverage. So, at or near means sometime between the date of enrollment and the date the insurer first receives premiums. Yes, that's correct, Your Honor. That would be our position. What's the remedy on your understanding if there is a fiduciary obligation and it was breached by accepting the first premium payment? The remedy, Your Honor, and this is not a question that the district court breached, but if it were to be remanded, the questions would be the lost opportunity cost for the participant because the participant could have sought other insurance policies. So, under a surcharge theory and a reformation of the contract, we would argue that the district court should have considered these different theories for harm to the participant. Can I ask you how this interacts with the recovery of benefits claim? I know you're not talking about that, but I guess this is just a, and I may be off base, but this is at least a question in my mind about thinking about how to think about the fiduciary obligation. I take it if you didn't make the premium payment, even if you had the insurability determination made, you would not be able to fulfill your obligation to pay the premium payment. That's correct, Your Honor. Yes. So, is it at least possible that there is an advantage to the insured or the potentially insured of paying the premium, unless I'm wrong about this, paying the premium in a period in which the eligibility determination has not been made on the thought that particularly if the recovery benefits argument is correct, that the continued payment of them can itself provide the basis for recovery? Your Honor, there's a distinction in that hypothetical where if it's a ministerial error or a clerical error where payments were received without there being coverage, then that would be an error. However, to have a system to allow premium payments to be paid for a decade without any... Well, this is why I was going to the question about what at or near means, because now you're saying that when the system is that you've had it for a decade, that would make it hard to say the fiduciary breach occurs upon the failure to have made the determination by the time of the first payment. Correct, Your Honor. I mean, at the time of if there was the first premium check being alerted in the system that this was made by error, then the system would not be imprudent. But in this case, the system allowed for premium payments to be collected repeatedly without any error being notified to the participant or the employer. But I guess that just goes to my... So, the system's set up, it has that allowance. The first premium payment is made, there's no insurability determination. This insurer, potential insurer, is also running an argument that the continued payment of the premiums can give rise to an alternative means of recovery under the contract with no insurability determination. However... If that's the insurer's position, if that's a possible position, the government isn't saying that's not a possible reading of the plan. Doesn't that create some tension with the idea that there's a breach of fiduciary duty in having the system set up that allows that to happen? If it's possible that the system allows that to happen, is there a possibility of getting recovery under the contract? No, Your Honor. Dee, you're not arguing that by paying premiums only, you're creating coverage and allowing for... But you're not arguing that that's an impermissible interpretation of the plan? No, Your Honor. Well, Your Honor, the plan was created by United to allow for this to go on. If there was anything that obliged United to make a determination and to notify the participant or the employer that EOI was required, then there would be no situation where the participant would continue to pay premiums for an extended period of time. No, I'm asking it the other way around. Let's just try one last time. The oddity to me in this case is that the plaintiff is simultaneously making a fiduciary breach argument. Now, maybe it's just... It's in the alternative and that's a way to reconcile it. But for purposes of determining whether there's a fiduciary duty, does that mean we have to assume the recovery of benefits claim fails? No, Your Honor. These are independent claims. Well, if they can both go forward, then I'm having a little bit of trouble because that would suggest that it's possible to read the contract to allow under the contract, recovery under the contract without an insurability determination so long as premiums are made. And yet, setting up a system that allows that and would permit recovery on that basis is a breach of fiduciary duty because no insurability determination is made. That does not make sense to me that both could be true. Yes, Your Honor. The person's argument would be that if recovery was made for a fiduciary breach and there would be a reformation of the contract because United never made a determination, coverage did not begin under United's terms. Well, I'll try one last version of it. Suppose plaintiff is correct that payment of premiums without an insurability determination can permit recovery of the benefits under the plan's terms, not as a fiduciary breach. If he's right about that, how could it be the case that there is a fiduciary breach in setting up a system that allows that to happen? The fiduciary breach, Your Honor, occurs with or without the participant trying to continue. Let me rephrase, Your Honor. The fiduciary breach occurs before the benefits claim is filed. I mean, I think the order in this case is that the breach occurred because there was a system in place with foreseeable risk of harm to the participant and United did nothing to address this risk prudently. So, what happened after the fact with the participant paying premiums under the assumption that they recovered because nothing was communicated to them otherwise, it does not change the fact that the breach occurred and United didn't do anything to address it. Counsel, one very quick question. From your brief, I take it that what the Secretary of Labor is asking this court is to adopt the Eighth and Fourth Circuit's position in this type of issue. Am I correct? Yes, Your Honor. Okay, and is there any other circuit that has gone the other way? No, Your Honor. No circuit has found that the fiduciary duty that we have found in this case is not allowed to be proceeded under the theory under 5023. Thank you. With that, we request that this court reverse the discourse judgment on the fiduciary breach claim. Thank you. Attorney Hahn, at this time, please mute your audio and video. And Attorney McGratton, if you would introduce yourself on the record to begin, you have eight minutes. Good morning, Your Honor. It's Brooks McGratton representing the Appellee Shields versus, excuse me, United of Omaha Life Insurance Company. As Judge Barron pointed out, there are two claims here. One is the 502A1B claim or the contract claim and the other claim is for breach of fiduciary duty. I will be discussing the 502A1B claim and Mr. Decker, who is appearing for ACLI, will address the breach of fiduciary duty claim. To start off, it's difficult to review these facts and not be sympathetic to the plaintiff. But this is not an ERISA case, excuse me, this is not a case where ERISA leaves the plaintiff with no remedy. But it has a clear and obvious remedy here and that is to sue the plan administrator. And why she has not done that is a bit of a mystery in this case. The district court can correctly decide the 502A1B claim or the contract claim. It correctly held that United appropriately construed the plan terms. Now plaintiff is trying to make the argument that the plan terms are ambiguous. That does not get the plaintiff very far because even if you assume the terms are ambiguous, we are dealing with a differential standard of review. Contra preferentum does not apply in ERISA in this circuit given that standard of review. Just so I follow, the suit against the plan administrator would be a fiduciary breach claim or a recovery of benefits claim? Fiduciary breach. Okay. Yep. Your position is that there is no recovery of benefits claim that could be brought here because there was no insurability determination. That is correct. That is correct. It really goes to the bedrock principle of ERISA that the court must and the plan administrator must enforce the terms of the plan as written. As Judge Singal pointed out, no matter how we might construe evidence of insurability here, at bottom United is required to approve something. There has to be that affirmative act. United has to approve. Here there is a two-step process to enrollment. One is the employer by their own admission in this case, receive forms. They are supposed to take the forms to employees, have them filled out, and send the information to the United. Then United begins the medical underwriting phase of this in which United determines if this is a risk that United is willing to accept. We never got to step two because step one never happened. By the employer's admission, they never processed the forms. They never spoke to Mr. Shields about completing evidence of insurability. The second argument plaintiff raises on this really goes to waiver and is trying to argue that United of Omaha waived the requirement of an evidence of insurability. The district court correctly rejected that contention on the basis that United, there is no showing in the record that United had actual knowledge that Mr. Shields had an evidence of insurability. It is important for the court to understand how payment of premiums work here. Do you think for the recovery of benefits, it would matter if they had actual knowledge? It goes to the waiver claim. I know. What do you make of that? Is your view that you can read the plan to allow for the waiver of the condition based on actual knowledge? Yes or no? No, because it is the function of the plan administrator, the employer and the claim administrator here, United, to enforce the terms of the plan as written. I don't think either is empowered to waive return plans. We can change the terms of the plan. The plan sponsor can do that going through rewriting the plan documents. In your view, the right answer, you have to return benefits, but there is no way you can get the coverage. That is correct. That is exactly correct. Finally, the plaintiff's argument on why the contract claim, why they should prevail on the contract claim is the agency argument. There is nothing in the plan document here that supports an agency relationship between Duramax and United. The contract, fairly read, is an agreement between the insurer and the employer. The contract provides the insurer is going to do certain things. The employer will do other things, but that by itself does not create an agency relationship. I would like to go back and correct one thing. This came up in the Department of Labor brief. In Ms. Hahn's argument, she referred to the plan created by United. United did not create this plan. Duramax is the plan sponsor, is the employer, is the plan administrator. Duramax is at liberty to revise this plan as Duramax sees fit. Duramax can fire United at any time by terminating the contract, the group policy. It is Duramax that has a self-administered plan. That means Duramax agrees to take responsibility for enrollment of its employees. I think what this case really gets down to is the liberty of fiduciaries to agree by contract as to who will do what in the course of administration of the plan. Mr. McGratton, in respect to that argument, does it make any difference whether we view the 2007 plan or the 2017 plan as controlling? I would submit it does not because both plans contain the same critical language, which is that Duramax as plan sponsor, plan administrator releases United of all responsibilities in connection with administration of the plan that have not been accepted in writing by United. That language appears both in the 2007 version and the 2017 version. The 2017 version has the benefit, added benefit of greater detail that Duramax will be responsible for enrollment. On that point as well, understand when we are talking about enrollment, we are not talking about a singular event. Mr. Shields joined Duramax in 2008, and that is the 2007 plan control. As the plaintiff states in page 21 of their brief, enrollment is not a one-time event. It is a continuous process. Employers often have open enrollment, so enrollment continues. We would suggest that the 2017 policy and certificate govern, because at that time, Mr. Shields was still an active employee. That was the plan enforced at the time that he died, and the claim for benefits submitted by the plaintiff, that was the controlling plan document. Just because this issue has now come up, and maybe you want your co-counsel to address this issue since it concerns the fiduciary claim, but just so I am following, insofar as United is a fiduciary under ERISA, it is because of the way ERISA describes the fiduciary duty statutorily, which if I don't quite have the language right in front of me, but it is the fiduciary duty with respect to such plan. So you in your brief refer to the plan requiring United to do things. Yes. So just so I am clear in what you are saying now, given that you accept that the plan requires United to do things, in what sense is it fair to say United is not a fiduciary under the plan with respect to the way that ERISA describes a fiduciary? I think you are getting to a fundamental flaw in the plaintiff's argument and in the department's argument. Both treat a fiduciary of a plan as a fiduciary for all purposes. If you are a fiduciary for one purpose, you are a fiduciary for all purposes. I just want to make sure you are not taking the position that United is not a fiduciary for any purpose. That is correct. Okay. So describe to me the purpose for which you understand United to be a fiduciary within the meaning of ERISA with respect to this plan. This is, I think, true, you are saying, for both the 2007 and the 2017 plan. That is correct. To answer your question, two purposes. One is, when evidence of insurability is received by United, United has an obligation to review that fairly and make a determination whether or not to enroll that specific employee. The second purpose pertains to claims. When a claim comes in, United has a fiduciary responsibility to examine the claim consistent with the terms of the plan to see if it should be paid. How do we know, is it from plan language or what, that your description of the first fiduciary duty must be understood in the limited way you just described it rather than in the broader way that it is being described by the plaintiff, as if you set up a system in which you are going to be receiving premiums for persons who only can get the coverage you are offering if you have made the eligibility determination and you are receiving them without being sure you have made the eligibility determination. That relates to a breach of the duty you have taken on as a fiduciary in committing to make the eligibility determination. Why is that clear from the contours of United's financial fiduciary responsibilities are defined by the terms of the plan and there is nothing in the terms of the plan to create a fiduciary duty that the plaintiff or the department has described. The plan does require that United make the eligibility determination. Once presented with evidence of insurability, correct. Where is that? That is in the text of the plan? Yes, it is. I have one very quick question, Mr. McGratton. You mentioned that Duramax was not a party to proceedings, that you had no idea or nobody knew why it was never sued, but just to make clear, you are not arguing that Duramax is an indispensable party, correct? No. Not in this case, but the most obvious remedy for plaintiff in the ERISA construct would be a direct action against the employer. Thank you. This helped me. I know we have more counsels. Let's continue. If you have any further questions for this case, I am perfectly happy to go to you. I yield my time to Mr. Decker. Thank you, Mr. McGratton. Please mute your audio and video. Mr. Decker, you have seven minutes of argument. Please introduce yourself to begin. Thank you, Your Honors. Bernd Decker for ACLI. Your Honors, the first line of Justice Roberts' opinion in the Concrete case from the Supreme Court is people make mistakes, even plan administrators. That opinion and numerous other Supreme Court opinions go on to talk about when courts are allocating responsibility for those mistakes, they have to keep in mind that ERISA was intended to promote and induce the formation of benefits plans by providing predictable liabilities in an efficient, cost-effective system. One of the primary mechanisms that ERISA and Congress does that is by the doctrine repeated time and time again by the Supreme Court and this Court that plan design, the way you structure the plan, is up to the plan sponsor. How you design the plan and allocate responsibilities is not a fiduciary function. Courts and administrators can't be in the business of micromanaging how those responsibilities are allocated because that will chill the formation of benefits plans. A very important point here. As Mr. McGratton mentions, this was a mistake by the plan administrator. They happen. They're expected to happen in the context of ERISA. ERISA provides a remedy for that, which allocates responsibility to the party that accepted those responsibilities and duties, is in the best position to follow through with them because they're interacting with those employees all the time, and they can go out and purchase liability insurance to cover themselves. This all goes to the point, once presented with evidence of eligibility, that's the key phrase for you that resolves the issue so that United is not a fiduciary. Is that the idea? Correct. The key statutory language, I think, that the department and the plaintiff are ignoring is to the extent. A person is only a fiduciary to the extent they exercise discretionary... So now, if you're right, your colleague suggested that the right person to sue for the breach of this fiduciary duty, that would be the plan administrator, which is the employer. Correct. What in the text of the plan would suggest that the employer had a fiduciary duty to ensure that the person, before they were paying the premiums, had the coverage? Again, so the plan sponsor decides how they're going to set this plan up, and I think the way the statute works, Your Honor, is that the summary plan description describes who the plan administrator is. No, no, just answer my question. We have this plan. We have your theory of how to read ERISA in light of a plan. You say that theory, given the text of the plan, shows that your client does not have a fiduciary duty of the kind that's being described because they only have a duty once they're presented with evidence of eligibility. The suggestion from your colleague is that's not going to leave insureds in a hole because they can sue the plan administrator for the breach of the fiduciary duty. On your theory, what in the language of the plan would suggest that the plan administrator had breached the fiduciary duty that it had with respect to making sure that a person is not mistakenly making payments on the thought that they're covered when they're not? Well, several things, Your Honor. The plan specifically allocates to the policyholder the responsibility for enrolling eligible persons for coverage under this policy and performing other administrative duties. How do they enroll them? I mean, how is that breached here? The policyholder will perform its responsibilities in accordance with the terms of this policy. It can only enroll someone who's eligible for coverage. How did they breach that? I guess I'm just not following. Did they enroll the person? Yes, they enrolled the person and they informed him later on that he was in fact covered. Your theory is that they enrolled the decedent who was ineligible and thereby breached their duty to enroll eligible persons. That's correct, Your Honor, and that's the cause of action that the plaintiff has and has decided to issue. And just so I understand that, what does it mean? Maybe it just turns a little bit on what this word enroll means. How do we know when you've been enrolled if you're not actually eligible? Well, I mean, that depends on the way the plan sponsors sets up the plan. Yeah, and so here we have this plan. How do you understand it to be set up such that you can be enrolled within the meaning of the plan even when you're not eligible for coverage? Well, I mean, I guess that's a play on words in terms of the word enroll. I mean, you can't. Well, that's my concern. If you can't, then the argument that your co-counsel gave, which is that you could sue the plan administrator, is going to run into the same argument, which is, well, they didn't breach any duty because they didn't enroll you. I think the duty they breach is when they inform the participant that he does in fact have the duty to provide all the information to the employees about the nature of the benefits and the nature of the plan. And that's where courts have found breaches of the relevant duties. And in fact, this fellow, in fact, asked them specifically, and they told him that he was enrolled for this coverage. So that's the duty that they breach. I mean, it's clear, Your Honor, that employees are- Yeah, but I guess this is what I'm concerned by. Is it possible to read this plan to mean enrolled in the sense that, yes, assuming the insurer finds you eligible. That's what enrolled means. Not, you have been found eligible. Because the way it's set up, it seems like the employer wouldn't know if you've been found eligible. And yet, a precondition for you being able to be deemed eligible is that you've signed up for the plan. If I just send something in to you from Cambridge, Massachusetts, saying, here, do you think I'm eligible? You'd say, who are you? The precondition I would have thought is that you signed up for the plan. That's what the employer makes sure happens. He said, yes, you've done that. You're listed as enrolled. But the employer isn't representing that I'm going to say you're therefore eligible for coverage. That's what United does. That's, again, plan design, Your Honor, that the plan sponsor chooses. It can allocate the responsibilities. Well, that's what I'm saying. But that's how it was designed. That suggests maybe that there's more to the planner's contention about what United's fiduciary obligation is, given the plan design. You're suggesting, no, the plan design is it's all on the employer. But the plan doesn't say any clearer way that it's going to be on the employer to inform you whether you're eligible and have been determined insurable by United. But remember, Your Honor, when an employer decides to and decides to become the plan administrator, the employer is the plan administrator responsible for all administrative functions, unless it specifically delegates those functions, as this court held in Rodriguez-Abreu, to some other entity. And that's exactly what the Fourth Circuit found in the Gordon case, which I think is almost directly on point and is the Fourth Circuit's case. Judge Helpe, you're on mute, I believe. Counsel, talking about presidents from the Fourth Circuit that we should follow, I understand in your amicus client's position, we should reject the Eighth Circuit and the Fourth Circuit's president in the Silva and McCravey v. Medlife case. Am I correct? No, that's not right, Your Honor. There's no precedent from the Eighth Circuit or the Fourth Circuit. I'm sorry, let me back up. The precedent from the Fourth Circuit that's relevant here is the Gordon case, the Gordon v. Cigna case that has facts almost identical to this fact, where the court rejected the exact duty that the DOL seeks to impose here for the same reasons that we've articulated. The McCravey case on the Fourth Circuit was on a motion to dismiss, where the issue was the scope of the remedy. Should we allow, due to the Amara decision, for a surcharge and estoppel remedy? And that broad dicta was set forth in that context. Moreover, it's sort of unclear from the opinion, but the opinion describes Metlife and McCravey as the plan administrators, which is obviously a distinction. I think when we talk about rulings of law made on motions to dismiss without a full record, that's where we get these broad pronouncements that are potentially, you know, overbroad. Same in the Eighth Circuit Silva case, which was a motion to dismiss to determine the scope of the remedy, where there was also an issue about the ambiguity of the policy. I would submit the precedent to follow from your sister circuits is the Fourth which started with the Coleman decision, which has language about what damage is done to the predictability of liability if you invent new duties. And what the DOL is doing here is they're taking the existence of a duty that United did agree to, and they're trying to use that to create a new duty that they did not agree to. And that does huge damage to the notion that, again, the plan design is the responsibility of the sponsor. And again, it's an unprecedented duty. I mean, I'm not aware of any court that has ever held that we're just going to invent a new duty that's contrary to the statute and to the terms of the plan. And again, it's so broad. Enrollment and eligibility happen all the time. Employees come, employees go, people are terminated. How an insurance company is supposed to keep track of that and have liabilities be predictable as the Supreme Court commanded, I don't know how that occurs. I think it's impossible. And I think you've gained nothing by imposing that duty, and you've done great, great damage to the principles that ERISA was founded on. If there are no other questions, I'll rest. Thank you. At this time, would Attorney Savage unmute his audio and video and reintroduce himself on the record? He has two minutes rebuttal. Trevor Savage for the appellant, Lorna Shields. Two points on rebuttal, Your Honor. The first is the Supreme Court made clear in its decision in Bancorp v. Dudenhofer that the duty of prudence trumps the instructions of a planned document and cites to ERISA section 1110A, which provides that any provision in an agreement or instrument that purports to relieve a fiduciary from responsibility for any duty under this part shall be void. But the professional question is, did the plan impose the duty that you're claiming on United? And the argument is that the plan language says no, because the duty that United took on expressly is limited to a duty to make an insurability termination once presented with the evidence. What's your answer to that? Well, Attorney, counsel for United was incorrect in arguing that there is planned language that that its duty only begins once it's confronted with a properly enrolled employee. That language is nowhere in the 2007 or the 2017 document. To the contrary, the language of the plan provides that coverage begins when United approves a statement of physical condition or other evidence and that evidence must be acceptable to us. It affords itself unlimited... Is there no language anywhere in the plan about once presented with? In other words, that's just their gloss on that text that you just read? That's just their gloss as far as I'm aware, Your Honor. And the problem with United's argument is the very problem diagnosed by the U.S. Supreme Court in SignaCorp v. Amara, in which under this scheme of sheer opportunism, insurers have every incentive to wrongfully accept premiums even if they have no idea whether coverage existed or even if they affirmatively knew... No, but you see, you're shifting into a point that the argument you just made, if I'm following, would be an argument that you would equally make if the text of the plan was as described by your opponent. I don't follow, Your Honor. I apologize. You're saying that if it can be that you can accept premiums for people who are not enrolled when you don't know whether they get the coverage, that's a breach of your duty. That's true that you're setting up a system as an insurer in which you're able to do that, but I understood your opponent to be saying, but if the plan says that the duty of the insurer only is triggered once presented with a request for insurability determination, the fact that the system allows that to happen that way doesn't mean there's a breach of fiduciary duty because they expressly only took on the duty making insurability determinations once presented with the evidence. If your point is the text of the plan doesn't say that, the text of the plan is much more open-ended than that, then I thought your argument was, well, when the text of the plan doesn't limit the duty in that way, then it's open to say you took on the broader duty and you are responsible for it, but if the plan were limited in that way, maybe it would be a different case. The plan is not limited in that way and so it's our position that it's afforded itself the ultimate discretion of determining eligible employees and it's free at any time, even if in staring at, looking in the face of evidence showing that there is no evidence of good health, it's free to disregard that, it's free to consider that not to be acceptable to it, and it's this scheme that was identified that it's a risk-free windfall for insurers. There's never a circumstance if United and the ACLI have their way, there's never a circumstance in which there's any remedy against United for that violation. There are no further questions, Your Honor. I guess just last one. Why wouldn't it be a reconstruction of the duty that United took on, given the plan language, that the duty was with respect to making a determination when asked to do so and nothing more than that? Because there's no circumstance in which, especially, I'll back up, especially given the limited discovery that's permitted in these cases and especially given the unfettered discretion that's afforded to United or to insurers in these cases, there's never a situation, it's hard to imagine a situation where there would be such incriminating evidence to place that active awareness on the insurer. I'll just ask you one last time. That seems like an argument that's not really responsive to the point your opponent's making or that I'm asking you. I'm asking you how to construe the plan language and what duty the plan language is understood to impose, and why wouldn't a natural construction of that language be read to impose the duty on the insurer to make a determination of eligibility when asked and nothing more than that? So two things, Your Honor. First, as I mentioned earlier, in Dudenhofer, the Supreme Court held that the duty of prudence trumps any provision of a plan document. So that being the case, it's our position that in affording itself this unlimited discretion, it only makes sense that the duty to make eligibility determinations on the front end of things at or around the time of enrollment makes sense because otherwise it would be free to wrongfully accept premiums for years, and the only recourse would be at the end, in the unlikely event that a claim is made, oh, we'll just refund the premiums. Mr. Savage, you say in affording itself this unlimited discretion, but the plan design here wasn't by United. The plan design was the responsibility of Duramax, wasn't it? Well, that's not in the record, Your Honor. That's certainly argument by the ACLI, but the plan language says us referring to United. But it's Duramax's plan. So unless there's affirmative evidence that United participated or was responsible for the design, don't we have to hold that Duramax is responsible for the design? Well, Your Honor, again, nowhere in the record does it say that it was Duramax that created the policy. To the contrary, the plan says, it defines the word us to mean Duramax. And so, again, under this, and I understand the ACLI is arguing that this is a way that the employers and insurers delegate responsibilities to lower the cost for employees. That's fine. But under that sort of conventional way of allocating responsibilities, United is afforded the opportunity to sit silent and wait for months to years to decades, either knowing or having taken note. But I guess the thing I'm not following is if there were a breach of fiduciary duty claim for allowing that to happen, that could be brought against the plan administrator. What is the problem with the fact that the insurer took on only this limited obligation to make LGBT determinants when asked to do so? From the perspective of the insurer, they still have recourse just against a different party because that's the party that took on that duty. Why is it important that the duty be able to run against United? I don't follow. Because the policy doesn't provide two things. First, the policy doesn't provide that United's duty only commences once it receives the form. That's nowhere in either policy. That is an argument by United that's not backed up by the plan. And the reason for our and the Department of Labor's description or characterization of the duty of prudence here is the problem identified by the Supreme Court in Stigma Corp versus Amara. There are no further questions. Do we have any information about the plan administrator's view of this question? Not that I'm aware of, Your Honor. Is that something that the plan administrator would have any be entitled any deference over if their view was that the duty was to the insurer rather than it or not? If I understand your question correctly, would the plan administrator, so Duramax's view as to the allocation of responsibility, would that be entitled to deference? Yeah. Not that I'm aware of, Your Honor. Okay. Thank you. Thank you. That concludes argument in this case. Attorney Savage, Attorney Hahn, Attorney McGrattan, and Attorney Decker, you should disconnect from the hearing at this time.